897 So.2d 1136 (2004)
Nathaniel HARRIS
v.
Leroy LOMBARDI.
2021042.
Court of Civil Appeals of Alabama.
January 9, 2004.
Rehearing Denied March 26, 2004.
*1137 Nathaniel Harris, pro se.
William H. Pryor, Jr., atty. gen., and LaVette Lyas-Brown, asst. atty. gen., for appellee.
PER CURIAM.
Nathaniel Harris, an incarcerated inmate proceeding pro se, sued Leroy Lombardi, alleging an assault and battery. On June 3, 2003, Lombardi moved the trial court to dismiss Harris's complaint, or, in the alternative, for a summary judgment. The trial court entered a summary judgment in favor of Lombardi on June 21, 2003. Harris appeals.
In reviewing the disposition of a motion for a summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
This court has stated:
"`Assault' has been defined as `an intentional, unlawful, offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented.' Western Union Tel. Co. v. Hill, 25 Ala.App. 540, 542, 150 So. 709, 710 (1933).... In a civil case, the elements of battery are: (1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner. Ex parte Atmore Cmty. Hosp., 719 So.2d 1190 (Ala.1998).... Our supreme court has explained that `"[a] battery consists in an *1138 injury actually done to the person of another in an angry or revengeful or rude or insolent manner, as by spitting in the face, or in any way touching him in anger, or violently jostling him out of the way, or in doing any intentional violence to the person of another."' Surrency v. Harbison, 489 So.2d 1097, 1104 (Ala.1986) (quoting Singer Mach. Co. v. Methvin, 184 Ala. 554, 561, 63 So. 997, 1000 (1913) ...)."
Wood v. Cowart Enters., Inc., 809 So.2d 835, 837 (Ala.Civ.App.2001) (emphasis omitted).
Harris alleged that on the date of the incident made the basis of his action he was serving meat in the meal line when he received several complaints from other inmates that the meat was undercooked. He alleged that he informed a steward, Mary America, that he had received complaints that the meat was undercooked and that she told him to retrieve another pan of meat to serve the inmates. Harris alleged that America told him that if anyone returned to the food line with undercooked meat to give that person another piece of meat. Harris further alleged that Lombardi, who was employed as a steward, observed him giving the inmates additional pieces of meat. Harris alleged:
"Lombardi grabbed Plaintiff Harris and started calling Plaintiff Harris names like, (Bitch's) and (Ho's), [and that Lombardi] told Plaintiff Harris [not to] put more meat on the inmates' tray.
"So Plaintiff Harris respectfully asked defendant Lombardi, not to put his hands on him again and not to call him [offensive] names.
"[During] this time, defendant Lombardi, hit [Harris] in the chest and several Correctional Officers saw the whole incident, such as Sgt. Tims, Officer Stonewall, and Officer Bennett, who [witnessed] the incident."
In support of his motion for a summary judgment, Lombardi presented his own affidavit in which he testified:
"On February 12, 2003, at approximately 4:00 p.m., inmate Nathaniel Harris was warned not to serve extra meat. No one had come and complained that there was anything wrong with the meat. Inmate Harris lied. Inmate Harris was observed serving extra meat to his friend and he was warned, by me ... to stop serving extra food. Then, inmate Harris put his hand into the french fries and gave extra fries to his friend. He was warned to stop and he didn't.[I] grabbed inmate Harris['s] hand to stop him from stealing french fries. Inmate Harris turned face to face with [me] and got close and started to shout threats that he was going to harm [me]. [I] pushed inmate Harris away in a defensive move; not to hurt inmate Harris. Sgt. Dale Tims and Assistant Warden Thomas came in and asked me what happened and I told them that I had caught inmate Harris stealing food. Also, Sgt. Tims asked [me] if he could serve a larger portion of french fries. I advised Sgt. Tims that I was told, by Steward II Mary America, to serve the size serving that was being serv[ed]."
Lombardi also presented a copy of the incident report in support of his motion. Roosevelt Bennett, a correctional officer, stated in the incident report that he heard Harris holler in a loud voice "get your hands off me" and that he observed Harris and Lombardi standing face to face when Lombardi pushed Harris away.
Harris responded to Lombardi's motion by presenting his own affidavit. Harris's affidavit basically restates the allegations made in his complaint and, in particular, fails to rebut Lombardi's showing that Harris became loud and threatening and that Lombardi pushed him away in a defensive *1139 manner. In opposing Lombardi's motion for a summary judgment, Harris cannot rely merely on the allegations made in his complaint. Lee L. Saad Constr. Co. v. DPF Architects, P.C., 851 So.2d 507 (Ala.2002). Accordingly, we conclude that the trial court properly entered a summary judgment in favor of Lombardi.
AFFIRMED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
CRAWLEY, J., dissents, with writing, which MURDOCK, J., joins.
CRAWLEY, Judge, dissenting.
I must respectfully dissent from the affirmance of the summary judgment in favor of defendant Leroy Lombardi. Nathaniel Harris, an inmate, sued Lombardi, a steward in the Holman Correctional Facility cafeteria, alleging that Lombardi had committed an "assault and battery" on Harris when, according to Harris, Lombardi punched Harris without provocation. Lombardi filed a motion to dismiss, or, in the alternative, a motion for a summary judgment asserting the defenses of absolute immunity and State-agent immunity and arguing that Harris had failed to state a claim upon which relief could be granted. In support of this motion, Lombardi filed his own affidavit, an incident report regarding the altercation, and Harris's medical records. Lombardi's affidavit states that he instructed Harris not to serve extra food to other inmates during dinner and that, despite being instructed to stop, Harris continued to serve extra food. According to Lombardi, inmate Harris moved toward Lombardi and shouted threats at Lombardi when Lombardi grabbed Harris's arm to stop him from serving extra food. Lombardi said that he pushed Harris away in a defensive move.
Harris responded to Lombardi's motion by filing his own affidavit. In that affidavit, Harris recounted the same set of facts that he alleged in his complaint. He said that several inmates approached him to say that the meat they had been served was not fully cooked. He said that he spoke with another steward, Mary America, who instructed him to give those inmates and any others who complained another piece of meat. According to Harris's affidavit, Harris did as he was instructed by America. He also stated that when Lombardi was informed that he needed to recook the undercooked meat, Lombardi became upset, grabbed Harris, and then punched Harris with his fist.
"`Assault' has been defined as `an intentional, unlawful, offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented.' Western Union Tel. Co. v. Hill, 25 Ala.App. 540, 542, 150 So. 709, 710 (1933) (emphasis added). See also Wright v. Wright, 654 So.2d 542, 544 (Ala.1995). In a civil case, the elements of battery are: (1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner. Ex parte Atmore Cmty. Hosp., 719 So.2d 1190 (Ala.1998) (emphasis added). Our Supreme Court has explained that `"[a] battery consists in an injury actually done to the person of another in an angry or revengeful or rude or insolent manner, as by spitting in the face, or in any way touching him in anger, or violently jostling him out of the way, or in doing any intentional violence to the person of another."' Surrency v. Harbison, 489 So.2d 1097, *1140 1104 (Ala.1986) (quoting Singer Mach. Co. v. Methvin, 184 Ala. 554, 561, 63 So. 997, 1000 (1913) (emphasis added))."
Wood v. Cowart Enters., Inc., 809 So.2d 835, 837 (Ala.Civ.App.2001).
We review a summary judgment de novo; we apply the same standard as applied by the trial court. A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c), Ala. R. Civ. P.; see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee, 592 So.2d at 1038 (footnote omitted). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d). See Ex parte General Motors Corp., 769 So.2d 903 (Ala.1999); West, 547 So.2d at 871; and Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989), for further discussion of the application of the summary-judgment standard.
Lombardi argues, and the majority agrees, that Harris's affidavit, because it recounts the same facts as those in the complaint, is insufficient to withstand a summary-judgment motion. I cannot agree with such a proposition. The fact that Harris's affidavit recounts the same allegations as those in his complaint is to be expected. Harris wrote the complaint, and he wrote the affidavit. The affidavit is simply his sworn statement concerning what events gave rise to his filing of the complaint in the first place. The affidavit of a party in a lawsuit typically recounts at least some of the facts contained in the complaint.
Although a nonmovant may not merely rest on the allegations contained in his complaint to defeat a properly supported summary-judgment motion, see Rule 56(e), Ala. R. Civ. P. ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."), Harris did not merely rely on the allegations contained in his complaint. As required by the rule, he filed an affidavit in support of his version of the facts. Without question, his version of the facts conflicts sharply with the version of the facts stated by Lombardi in his affidavit. The majority comments that Harris's affidavit does not "rebut Lombardi's showing that Harris became loud and threatening and that Lombardi pushed him away in a defensive manner." 897 So.2d at 1138-39. Harris testified in his affidavit that Lombardi became upset and struck Harris for "know [sic] reason." That, in the mind of most reasonable people, "rebuts" Lombardi's statement that Harris was the aggressor. Therefore, I conclude that the trial court could not have properly entered a summary judgment on the basis that Harris had not produced evidence creating a genuine issue of material fact about whether Lombardi committed a battery.
However, because Lombardi also asserted the defenses of absolute and State-agent immunity, I must consider whether either of those defenses could serve as a basis for the summary judgment. If Lombardi was sued in his official capacity, he would be entitled to absolute immunity *1141 under Article I, § 14, Alabama Constitution of 1901, which prohibits the State of Alabama from being made a party to any lawsuit and which prohibits any suit against a State agent that is in effect a suit against the State from being maintained. In my mind, the complaint does not allege a cause of action against Lombardi in his official capacity; however, if it did, the summary judgment would be proper on the basis of absolute immunity.
The question whether Lombardi is entitled to State-agent immunity is a more complex question.
"`Ex parte Cranman, 792 So.2d 392 (Ala.2000), recounts the evolution of State-agent immunity ...,' Ex parte Rizk, 791 So.2d [911,] 913 [(Ala.2000)], and restates the law on that topic:
"`We therefore restate the rule governing State-agent immunity:
"`A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"`(1) formulating plans, policies, or designs; or
"`(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"`(a) making administrative adjudications;
"`(b) allocating resources;
"`(c) negotiating contracts;
"`(d) hiring, firing, transferring, assigning, or supervising personnel; or
"`(3) discharging duties imposed on a department or agency by statute, rule, or regulation insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
"`(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
"`(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
"`Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
"`(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
"`(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.'
"Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000) (emphasis in original). `This restatement was adopted by our decisions in Ex parte Rizk, [supra,] and Ex parte Butts, 775 So.2d 173 (Ala.2000).' Ex parte Blankenship, 806 So.2d 1186, 1189 (Ala.2000)."
Alabama Dep't of Corr. v. Thompson, 855 So.2d 1016, 1020 (Ala.2003).
Lombardi is an employee of the Department of Corrections whose job apparently does involve supervising inmates. However, the facts contained in Harris's affidavit, taken in the light most favorable to Harris, as is required by our standard of review, see Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990), establish that *1142 Lombardi hit Harris when Lombardi was instructed to recook meat by his supervisor Mary America. Although one of Lombardi's duties may have been to supervise inmates serving meat at the cafeteria, his duties would not have involved striking an inmate in retaliation for an order of his superior. Were Lombardi's actions, as described by Harris, willful or malicious?
"`"Wilfulness" is the conscious doing of some act or omission of some duty under knowledge of existing conditions accompanied with a design or purpose to inflict injury.' Instruction 29.01, Alabama Pattern Jury Instructions  Civil (2d ed.1993); see also Roe v. Lewis, 416 So.2d 750, 754 (Ala.1982) (willfulness `denotes an intention to cause an injury'). Similarly, malice is defined as `[t]he intent, without justification or excuse, to commit a wrongful act....' Black's Law Dictionary, 968 (7th ed.1999)."
Ex parte Nall, 879 So.2d 541, 546 (Ala.2003).
The facts as asserted by Harris provide evidence that, when viewed in a light most favorable to Harris, would establish that Lombardi acted willfully, maliciously, or beyond his authority in striking inmate Harris. Thus, I cannot conclude that the trial court's summary judgment can be upheld on this ground. Accordingly, because I find no basis for upholding the summary judgment, except insofar as the complaint might assert a cause of action against Lombardi in his official capacity, I must respectfully dissent.
MURDOCK, J., concurs.