Terry C. Parker and Carolyn Robertson Parker, husband and wife, appeal from a summary judgment in favor of J.C. Penney Life Insurance Company and Stonebridge Life Insurance Company, formerly known as J.C. Penney Life Insurance Company. The Parkers named both Stonebridge and J.C. Penney as defendants in this action; however, for purposes of this appeal, we find no distinction between the two entities and we hereinafter refer to Stonebridge and J.C. Penney collectively as "Stonebridge." We affirm.
 Background
On July 29, 2005, the Parkers sued Stonebridge asserting claims of breach of an insurance contract and bad-faith refusal to pay an insurance claim. Those claims arose out of a life-insurance policy, certificate number 82AG1T8789, master policy number 25481 GC347, issued to Terry C. Parker by Stonebridge and effective December 9, 1997 (hereinafter referred to as *Page 410 
"the insurance policy" or "the 1997 policy").[1] The Parkers alleged that Willis Lee Robertson, the biological son of Carolyn Parker and the stepson of Terry Parker, was a "covered person" under the insurance policy; that, on September 14, 1999, Robertson died as a result of an automobile accident; that the Parkers timely notified Stonebridge of the death; and that Stonebridge refused or failed to pay the claim.
On November 3, 2005, Stonebridge answered the Parkers' complaint.[2] On March 2, 2006, the Parkers moved the trial court to enter a default judgment in their favor because, the Parkers alleged, Stonebridge had failed to respond to the complaint. The trial court denied that motion, pointing out that Stonebridge previously had answered the complaint. In April 2006, Stonebridge submitted written discovery requests to the Parkers; the Parkers responded to those requests in May 2006.
On June 20, 2006, Stonebridge moved the trial court to enter a summary judgment in its favor. In support of that motion, Stonebridge submitted a narrative statement of undisputed facts, the affidavit of Charles K. Costa, the vice president of claims for Stonebridge, and the Parkers' discovery responses. In its summary-judgment motion, Stonebridge argued:
 (1) that no cause of action existed under a 1999 insurance policy issued to Terry Parker by J.C. Penney (see note 1, supra);
 (2) that Carolyn Parker lacked standing to assert any claims against Stonebridge because she was not the insured under the 1997 policy;
 (3) that Stonebridge did not breach its 1997 policy with Terry Parker because
 (a) Stonebridge did not deny Parker's claim;
 (b) Parker failed to comply with the notice provisions of the insurance policy;
 (c) Parker did not cooperate with Stonebridge in the claims-investigation process; and
 (d) Robertson was not a "covered person" under the 1997 policy; and
 (4) that Terry Parker's bad-faith claim lacked merit because
 (a) Stonebridge had not denied Parker's claim for accidental-death benefits;
 (b) even if Parker's bad-faith claim was ripe, it was barred by the statute of limitations;
 (c) even if Parker's bad-faith claim was ripe, it was barred by Parker's failure to cooperate with Stonebridge in the claims-investigation process; and
 (d) Stonebridge could not be liable for bad-faith refusal to pay Parker's claim because Robertson was not a "covered person" under the 1997 policy.
On July 10, 2006, the trial court entered an order allowing the Parkers 30 days to respond to Stonebridge's summary-judgment motion. The trial court indicated that if the Parkers did not file an appropriate response within that time frame, it would grant Stonebridge's motion. *Page 411 
On July 20, 2006, the Parkers submitted their own motion for a summary judgment, arguing summarily that Robertson was their dependent and that the policy language was confusing as to the date coverage for dependents ended. The Parkers filed no exhibits in support of their summary-judgment motion. The Parkers also did not respond to the arguments asserted by Stonebridge in its summary-judgment motion.
In November 2006, the trial court set the pending summary-judgment motions for a hearing on November 29, 2006. The trial court also directed Stonebridge to submit a proposed order on its summary-judgment motion. The Parkers were represented by counsel at the summary-judgment hearing.[3]
On January 3, 2007, the trial court granted Stonebridge's summary-judgment motion and denied the Parkers' summary-judgment motion. The trial court's order stated that its ruling on the summary-judgment motions was "[c]onsistent with the accompanying Memorandum Opinion."
On February 2, 2007, the Parkers filed their notice of appeal. In their brief on appeal, the Parkers argue that they "never had an opportunity to come into court and present evidence regarding the complexities of dependency" and, therefore, that the trial court's judgment was the result of "intrinsic fraud."
 Standard of Review
"We review the trial court's entry of a summary judgment de novo, and our standard of review is well settled.
 "`In reviewing the disposition of a motion for summary judgment, "we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact," Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was "entitled to a judgment as a matter of law." Wright v. Wright, 654 So.2d 542 (Ala. 1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. *Page 412 Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413
(Ala. 1990).'"
Hollingsworth v. City of Rainbow City, 826 So.2d 787,789 (Ala. 2001) (quoting Hobson v. American Cast Iron PipeCo., 690 So.2d 341, 344 (Ala. 1997)).
 Breach of Contract
In support of its motion for a summary judgment, Stonebridge argued, among other things, that the Parkers had failed to establish that Robertson was a "covered person" under the insurance policy. Thus, Stonebridge argued, its contractual obligation to pay benefits to Parker never arose. Stonebridge pointed out that the 1997 policy defines a "covered person" to include:
 "2. each of your children (including step-children . . .) 18 years of age or younger, unmarried and dependent upon you for support and maintenance; and
 "3. Your unmarried child 19 years of age but less than 23 years of age if the child is:
 "a. a full-time student; and
 "b. dependent upon [the insured] for support and maintenance."
It was undisputed that Robertson was between 19 and 23 years old at the time of his death. Therefore, in order to qualify for coverage under the insurance policy, Robertson had to have been a full-time student and he had to have been dependent upon Terry Parker, the insured, for support and maintenance. After the Parkers submitted their claim, Stonebridge requested on several occasions — on June 6, 2002, July 9, 2002, August 14, 2002, and September 16, 2002 — documentation to establish that Robertson met the coverage criteria of the insurance policy. However, neither the Parkers nor their legal counsel responded to Stonebridge's requests. As of September 16, 2002, Stonebridge indicated that it was closing the file "until the necessary documents are received."
In July 2005, the Parkers commenced this action, and Stonebridge again argued, among other things, that the Parkers had failed to establish that Robertson was a "covered person" under the insurance policy. In support of its summary-judgment motion, Stonebridge relied on the written discovery responses submitted by the Parkers. In those responses, the Parkers indicated that, at the time of his death, Robertson had been living with his paternal grandparents in Jasper. Those responses also indicated that, before moving to Jasper, Robertson had lived in Tuscaloosa with his maternal grandparents and that, before that, Robertson had lived for awhile in Texas. The Parkers did not identify when, if ever, Robertson had lived with them in Harpersville or elsewhere. In response to Stonebridge's question regarding whether Robertson had owned or rented the residence in which he had lived, the Parkers indicated, "[we] think he just lived with his grandparents." Additionally, the Parkers disclaimed any knowledge of Robertson's financial arrangements, if any, with his grandparents.[4]
The Parkers also responded that they had no knowledge as to whether Robertson had been a full-time student at the time of his death and that "nobody has . . . records that [we] know of to establish whether Robertson had been enrolled as a full-time student at the time of his death. The only information provided by the Parkers to support their claim was that Terry Parker gave Carolyn, his wife, money to send to Robertson at times. However, *Page 413 
Parker did not specify the amount of money sent to Robertson, on what dates money had been sent, how often money was sent, the intended purpose of that money, or the use to which Robertson put the money. Thus, the Parkers had no documentation or knowledge to establish the extent, if any, of their financial contribution to Robertson's support and maintenance.
As argued by Stonebridge, the Parkers' responses to discovery were insufficient to establish that Robertson was covered by the insurance policy. Thus, Stonebridge met its burden of proof at the summary-judgment stage by "mak[ing] a prima facie showing that there [was] no genuine issue of material fact" as to whether Robertson was a "covered person" under the insurance policy and, thus, whether the Parkers were entitled to recover on their breach-of-contract claim. At that point, the burden of proof shifted to the Parkers to produce substantial evidence indicating that Robertson was, in fact, a "covered person" under the insurance policy. See Rule 56, Ala. R. Civ. P.; see also Prowell v. Children's Hosp. of Alabama,949 So.2d 117 (Ala. 2006) (discussing the shifting burden of proof at the summary-judgment stage); State Farm Fire Cas. Co. v. Shady Grove Baptist Church, 838 So.2d 1039,1043-44 (Ala. 2002) (recognizing that an insured or claimant seeking to recover benefits under an insurance policy must establish that the occurrence made the basis of the insured's claim falls within the coverage of the policy); andColonial Life Ace. Ins. Co. v. Collins,280 Ala. 373, 194 So.2d 532 (1967) (accord).
We find nothing in the Parkers' summary-judgment motion that addresses the issue whether Robertson was a "covered person" under the policy; we also note that the Parkers did not file a response to Stonebridge's motion for a summary judgment.[5]
Under the facts as established in the record, Stonebridge made a prima facie showing that it was entitled to a summary judgment, and the Parkers did not meet the burden of proof that shifted to them to rebut Stonebridge's prima facie showing that it was entitled to a summary judgment. Because the Parkers failed to submit evidence establishing that Robertson was covered under the insurance policy, Stonebridge's duty and obligation to pay benefits to the Parkers never arose. Thus, as a matter of law, Stonebridge could not have been found to have breached the insurance policy for failing to pay those benefits. See, e.g., Akpan v. Farmers Ins. Exch.,Inc., 961 So.2d 865, 871 (Ala.Civ.App. 2007).
We reject the Parkers' contention that the trial court prevented them from presenting evidence of Robertson's dependency. The record reveals that the trial court took no action and entered no ruling that precluded the Parkers from presenting the necessary evidence to create a genuine issue of material fact as to Robertson's dependency. It appears that the Parkers simply did not, or more accurately could not, present the requisite proof of dependency. If the Parkers believed that, if they were given more time or access to more information, they could prove Robertson's dependency, they could have filed an affidavit pursuant to Rule 56(f), Ala. R. Civ. P. The record contains no affidavit complying with Rule 56(f). Hence, the trial court did not commit reversible error in entering the summary judgment on the *Page 414 
Parkers' breach-of-contract claim, and we affirm that portion of the judgment.
 Bad-Faith Refusal to Pay An Insurance Claim
The Parkers also appeal the summary judgment in favor of Stonebridge on their claim of bad-faith refusal to pay an insurance claim. However, in a normal bad-faith action like the one at issue in this case, "one who cannot prove [entitlement] to benefits under an insurance policy cannot recover on a bad-faith claim." Acceptance Ins. Co. v. Brown,832 So.2d 1, 16 (Ala. 2001); see also White v. State Farm Fire Cos. Co., 953 So.2d 340, 348 (Ala. 2006);Auto-Owners Ins. Co. v. Abston, 822 So.2d 1187, 1193
(Ala. 2001); State Farm Fire Cos. Co. v. Slade,747 So.2d 293, 318 (Ala. 1999); and Employees' Benefit Ass'nv. Grissett, 732 So.2d 968, 972 (Ala. 1998). For this reason, we affirm the summary judgment entered by the trial court on the Parkers' bad-faith claim.
We affirm the trial court's judgment in favor of Stonebridge on the Parkers' breach-of-contract and bad-faith claims. Based on our resolution of those issues, we need not address the other issues raised on appeal by either party.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
[1] It is unclear why J.C. Penney was named as a defendant in this action. Based on our reading of the record, it appears that the 1997 policy was issued to Terry Parker under the name of Stonebridge Life Insurance Company. However, in 1999, another insurance policy was issued to Terry Parker under the name of J.C. Penney. That policy is not at issue in this litigation.
[2] Before filing its answer, Stonebridge filed a motion to dismiss. The trial court denied the motion.
[3] A "memorandum opinion" attached to the trial court's judgment states that the Parkers were represented by counsel at the summary-judgment hearing. The record does not contain a transcript of that hearing. We further note that the Parkers did not take issue with the statement in the memorandum opinion that they were represented by counsel at the summary-judgment hearing. Therefore, from the record before us, we must assume that the Parkers were aware of the hearing before the trial court and that the Parkers were, in fact, represented by counsel at that hearing. However, in their brief to this court, the Parkers assert:
 "The litigants filed cross-motions for summary judgment. The trial court set a hearing date to hear these motions, but no one bothered to notify the plaintiffs. The hearing was reset for November 29, 2006. The trial court granted the defendants' motion on December 6, 2006, but did not file it until January 3, 2007."
[4] In fact, Carolyn Parker was not on speaking terms with Robertson's paternal grandparents and Terry Parker had never spoken with or met Robertson's paternal grandparents.
[5] As previously noted, the record does not contain a transcript of the summary-judgment hearing.